**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| THEOLIS SMITH, | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | 08 C 6951 |
|     v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| DETECTIVE OSCAR ARTEAGA | ) | |
| #20345, DETECTIVE HENRY | ) | |
| BARSCH #20923, individually, and | ) | |
| the CITY OF CHICAGO, | ) | |
| | ) | |
|     **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff claims that Chicago police officers Arteaga and Barsch falsely arrested him in violation of federal law and maliciously prosecuted him in violation of state law and that the City of Chicago is required to indemnify the officers for any judgment rendered against them on the state law claims. Defendants have filed a Federal Rule of Civil Procedure 56 motion for summary judgment on all of these claims. For the reasons set forth below, the Court grants the motion.

### Facts

Viewed favorably to plaintiff, the record shows that Antoine Edwards was fatally shot on November 1, 2006 at about 11:00 p.m. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 15; Defs.' LR 56.1 Stmt, Ex. F, 11/4/06 Case Supplementary Report at 1[1].) That night, and again on December 9, 2006,

---

[1]Plaintiff admits the facts in paragraphs 6-13, 15-24, 30-36, 41-60 and 63-65 of defendants' fact statement, subject to his objection that the police reports cited as support are inadmissible hearsay. Evidence offered for summary judgment must be admissible in content, not form. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994). Because the people who purportedly made the statements in the reports can testify at trial, the Court overrules the

Arteaga interviewed Raymond Cooks. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 19; Defs.' LR 56.1 Stmt., Ex. G, 1/30/07 Case Supplementary Report at 9-10; *id.*, Ex. H, 11/18/06 Case Supplementary Report at 7-8.) Cooks said that he and Paul Anderson had been sitting with Edwards in Edwards' SUV, which was parked in front of 8108 Oglesby, drinking alcohol and smoking marijuana, just before Edwards was shot. (Pl.'s Stmt. Add'l Facts ¶ 19; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 19; *see id.*, Ex. G, 1/30/07 Case Supplementary Report at 10.) According to Cooks, Edwards was in the driver's seat, Cooks was seated behind him and Anderson was in the passenger seat. (Pl.'s Stmt. Add'l Facts ¶¶ 20, 22.) Cooks said two black men, who were wearing black sweatshirts with the hoods pulled up and black masks that covered their noses and mouths, approached the SUV and one of them shot Edwards. (*Id.* ¶ 23.) Cooks did not provide any other description of the shooter and said that Anderson had been asleep in the SUV until the shot was fired. (*Id.* ¶ 23; Defs.' LR 56.1 Stmt., Ex. G, 1/30/07 Case Supplementary Report at 10; *id.*, Ex. H, 11/18/06 Case Supplementary Report at 7.)

On the night of the shooting, Arteaga also spoke to Edward Whetstone, a friend of the victim. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 20.) Whetstone said plaintiff might be the shooter because, about a week before, Anderson had beaten plaintiff and plaintiff later threatened Anderson with a gun near 81st Street and Oglesby. (*Id.* ¶¶ 22-23.) Whetstone said shots were fired into 8108 Oglesby later that night. (*Id.* ¶ 22.)

On November 4, 2006, officers Swain and Easter questioned Anderson about Edwards' shooting. (*Id.* ¶¶ 30, 32; *see* Defs.' LR 56.1 Stmt., Ex. F, 11/4/06 Case Supplementary Report at 6.) Anderson said he was asleep in the SUV, which had tinted windows, until the shot was fired, and could not identify the shooter, but "[he] seemed to be the same size as" plaintiff. (Pl.'s Resp. Defs.'

---

objection.

LR 56.1 Stmt. ¶ 32; Pl.'s Stmt. Add'l Facts ¶¶ 19-20, 22.) Easter was also the detective investigating the October 23, 2006 shooting at 8108 Oglesby, and he told Arteaga and Barsch that Anderson may have been the intended victim of that shooting. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶¶ 9, 31-32; Def.'s LR 56.1 Stmt., Ex. F, 11/4/06 Case Supplementary Report at 5.) Easter also told defendants that he had put out "an active investigative alert with no probable cause to arrest" for plaintiff in connection with the October shooting. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 14; *see* Def.'s LR 56.1 Stmt, Ex. B, 12/9/06 Arrest Report at 3.)

On November 17, 2006, Arteaga and Barsch questioned Anderson about the night Edwards was murdered and then "asked him about a history between him and [plaintiff]." (Pl.'s Resp. Mot. Summ. J., Ex. B, Arteaga Dep. at 95-112.) After questioning Anderson about plaintiff, defendants showed him a photo array that included plaintiff, and Anderson identified plaintiff as the shooter. (*Id.* at 112-13; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 36; *id.*, Ex. G, 1/30/07 Case Supplementary Report at 9.)

On December 9, 2006, plaintiff was arrested by two other officers on unrelated charges. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 4.) When they processed plaintiff, the officers discovered the investigative alert, so they turned plaintiff over to Easter for questioning about the October shooting. (*Id.* ¶¶ 7-6.)

When Easter was finished, he turned plaintiff over to Arteaga and Barsch for questioning about Edwards' murder. (*Id.* ¶ 12.) Defendants interviewed plaintiff at 2:47 and 7:50 p.m. on December 10, and at 12:06 a.m. on December 11, 2006. (Def.'s LR 56.1 Stmt., Ex. G, 1/30/07 Case Supplementary Report at 13-14.) During the first interview, plaintiff said Anderson had beaten him because plaintiff's girlfriend had replaced Anderson's friend as the payee for "Billy's" social security checks. (*Id.* at 13; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶¶ 45-46.) He also said he was playing video games at home with Tanorris Simms, Billy and Lydia on the night of the murder. (Pl.'s Resp.

Defs.' LR 56.1 Stmt. ¶ 47.)

During the second interview, plaintiff said he did not find out about Edwards' murder until the day after it happened. (Def.'s LR 56.1 Stmt., Ex. G, 1/30/07 Case Supplementary Report at 11.)

During the third interview, plaintiff said he had been afraid he would be arrested for Edwards' murder, so he told Tanorris Simms to tell the police that he was with plaintiff when the murder occurred. (*Id.* at 14; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 56.) Simms refused to speak to the police. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 57.)

During one of the three interviews, Arteaga told plaintiff that he did not believe Anderson's story and thought plaintiff had nothing to do with the murder. (Pl.'s Resp. Mot. Summ. J., Ex. A, Pl.'s Dep. at 96, 105.)

On December 10, 2006, Arteaga and Barsch re-interviewed Anderson. (Def.'s LR 56.1 Stmt., Ex. G, 1/30/07 Case Supplementary Report at 11.) Anderson told them plaintiff had chased him with a gun on October 23, 2006, in reprisal for a beating Anderson had given plaintiff earlier in the day, and Anderson got away by going into 8108 Oglesby. (*Id.* at 11.) Anderson also said he thought plaintiff shot Edwards "due to the physique and the [part of the shooter's] face that was . . . visible" above the mask. (*Id.* at 12.)

On December 10, 2006, Arteaga and Barsch also interviewed plaintiff's girlfriend, Denise McBride. (*Id.* at 12.) Initially, she said she could not remember what she did or where she was on November 1, 2006. (*Id.*) When the officers told her that was the night Edwards was killed, she said she came home from work around 7:30 or 8:00 p.m and found plaintiff drinking and smoking weed with Reese, Billy and man whose name started with a "T." (*Id.* at 13.)

On December 11, 2006, Arteaga and Barsch showed Cooks and Anderson a line up that included plaintiff, and each identified plaintiff as the shooter. (*Id.* at 15; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶¶ 59-60.) Thereafter, plaintiff was charged with Edwards' murder. (Pl.'s Resp. Defs.' LR

56.1 Stmt. ¶¶ 63-65.)

**Discussion**

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Defendants argue that they are entitled to qualified immunity on plaintiff's section 1983 claim. "Qualified immunity protects government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Viilo v. Eyre*, 547 F.3d 707, 709 (7th Cir. 2008) (quotation omitted). Defendants are entitled to qualified immunity if: (1) the facts, viewed favorably to plaintiff, suggest that defendants violated his Fourth Amendment rights by arresting him without probable cause; and (2) defendants reasonably, but mistakenly, believed they had probable cause. *Id.* at 709-10.

Defendants had probable cause if "the facts and circumstances within their knowledge and of which they [had] reasonably trustworthy information [were] sufficient to warrant a prudent person in believing that [plaintiff] had committed an offense." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (quotation omitted). Viewed favorably to plaintiff, the record shows that, at the time of the arrest, defendants knew: (1) Anderson and Cooks, who had been drinking and smoking marijuana, were the only witnesses to the murder; (2) the shooting occurred at 11:00 p.m. on

November 1, 2006 in an SUV that had tinted windows; (3) the only description Cooks ever gave of the shooter was that he was a black male who wore a black sweatshirt with the hood pulled up and a black mask that left only his eyes and forehead visible; (4) Anderson had beaten plaintiff up on October 23, 2006; (5) Anderson claimed that, after the beating on October 23, 2006, plaintiff chased him with a gun in the vicinity of 81st Street and Oglesby; (6) the evening of October 23, 2006, someone fired shots into the house at 8108 Oglesby; (7) Easter, who was investigating the house shooting, put out an investigative alert for plaintiff in connection with the house shooting; (8) on November 17, 2006, Anderson identified plaintiff from a photo array as the man who shot Edwards; (9) on December 10, 2006, plaintiff said he told Tanorris Sims to tell the police that plaintiff and Sims were together at the time of the murder; and (10) on December 11, 2006, Anderson and Cooks identified plaintiff as the shooter from a line up.

However, there is also evidence that on December 10, 2006, Arteaga told plaintiff that he did not believe Anderson's version of events and knew plaintiff had nothing to do with the murder. There is no evidence as to whether Barsch agreed with Arteaga, but it is reasonable to infer that the two investigators had the same view. Thus, Anderson's identifications and his description of the events of October 23, 2006 cannot be considered in the probable cause determination.

The investigative alert for the house shooting also cannot be considered for two reasons. First, the alert explicitly says that there is no probable cause to arrest plaintiff for the shooting, *i.e.*, that there was not sufficient evidence to believe that plaintiff was the shooter. (Defs.' LR 56.1 Stmt., Ex. B, 12/9/06 Arrest Report at 3.) An inchoate suspicion that plaintiff committed the first shooting cannot support a reasonable belief that he committed the second. Second, though there is no evidence that explains why Easter suspected plaintiff was the house shooter, it is reasonable to infer that his suspicions were based on Anderson's account of the events of October 23, 2006. Because defendants discounted the very same story when Anderson later relayed it to them, Easter's

apparent belief in it cannot be attributed to defendants.

Viewed favorably to plaintiff, his statement to Sims also does not suggest that he committed the crime. According to the police report, plaintiff said that "he told Tanorris Simms that people would say he shot "Twan" [Edwards], so if anyone asked where [plaintiff ] was at the time of the [h]omicide he should say he was with him in the house." (*Id.*, Ex. G, 1/30/07 Case Supplementary Report at 14.) The report does not, however, state that plaintiff said he lied about being with Sims. (*Id.*) In fact, it suggests the opposite because it says, immediately after the statement quoted above: "[Plaintiff] further stated that Billy, Maurice and Lydia were *also* in the house." (*Id.*) (emphasis added). Absent evidence that Sims was not, in fact, with plaintiff at the time of the shooting, plaintiff's statement to him does not suggest guilt.

That leaves Cooks' line up identification of plaintiff. The Seventh Circuit has held that an identification from a single, credible witness can be sufficient for probable cause. *See Gramenos v. Jewel Cos.*, 797 F.2d 432, 440 (7th Cir. 1986). The issue here is the reliability of Cook's identification, which is determined by the totality of the circumstances, including his "opportunity . . . to view the criminal at the time of the crime, [his] degree of attention, the accuracy of [his] prior description of the criminal, the level of certainty [he] demonstrated at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). It is undisputed that Cooks did not know plaintiff before the shooting, had no motive to implicate plaintiff in the shooting, was apparently lucid enough to be interviewed shortly after the shooting and was only a few feet away from the shooter at the time of the crime. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶¶ 25, 62; *see* Defs.' LR 56.1 Stmt., Ex. H, 11/18/06 Case Supplementary Report at 7-8.) However, it is also undisputed that Cooks had been drinking and smoking marijuana just before the shooting, he witnessed the crime at 11:00 p.m. from the backseat of an SUV that had tinted windows, the only description he gave of the shooter before identifying plaintiff from the line

up was that the shooter was a black male who wore a black sweatshirt with the hood pulled up and a black mask that left only his eyes and forehead visible and the line up took place five weeks after the crime. (Pl.'s Stmt. Add'l Facts ¶¶ 19-20, 23; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 19; Defs.' LR 56.1 Stmt., Ex. G, 1/30/07 Case Supplementary Report at 2, 9-10, 15; *id.*, Ex. H, 11/18/06 Case Supplementary Report at 7-8; *id.*, Ex. F, 11/4/06 Case Supplementary Report at 5.) Even if these facts do not establish that defendants had actual probable cause to arrest plaintiff, taken together with the controlling law they establish that defendants had arguable probable cause for the arrest. Thus, Arteaga and Barsch have qualified immunity on plaintiff's section 1983 claims.

They are also immune from the state malicious prosecution claim by virtue of the Illinois Tort Immunity Act. That statute shields police officers from claims arising from law enforcement activities unless their actions are "willful and wanton." 745 Ill. Comp. Stat. 10/2-202. Defendants acted willfully and wantonly if their conduct showed intent to harm plaintiff or utter indifference to or reckless disregard of his rights. 745 Ill. Comp. Stat. 10/2-210. There is no evidence that Arteaga or Barsch intended to harm plaintiff and the existence of arguable probable cause precludes a finding of indifference or recklessness. Accordingly, both they and the City are entitled to judgment as a matter of law on plaintiff's state law claims.

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact on plaintiff's claims and defendants are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motion for summary judgment [doc. no. 46] and terminates this case.

**SO ORDERED.**                              **ENTER:**

**September 30, 2010**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**